# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| RICHARD CORBIN | : | NO. 10-352-02 |
| JOHNNIE CORLEY | | NO. 10-352-03 |

## MEMORANDUM RE: POST-TRIAL MOTIONS

**Baylson, J.**                                                                     October 24, 2011

      On June 17, 2011, Richard Corbin ("Corbin") and Johnnie Corley ("Corley") were convicted by a jury of 27 of 28 counts, including conspiracy to commit Hobbs Act robbery, multiple counts of Hobbs Act robbery related to armed robberies of pharmacies and a delivery truck driver, carjacking, possession of a firearm during and in relation to the robberies/carjacking, possession with intent to distribute the thousands of pills stolen during these robberies, and conspiracy to distribute and possess with intent to distribute those pills.

      Three post-trial motions have been filed as follows:

      1.       Defendant Corley's Motion for Arrest of Judgment Pursuant to Rule 34 (ECF No. 222).

      2.       Defendant Corley's Motion for New Trial Pursuant to Rule 29 (ECF No. 223).

      3.       Defendant Corbin's Pro Se Motion for Arrest of Judgment (ECF No. 225).

      Because of the severity of the crimes for which the Defendants were convicted, and their serious criminal records, the Court imposed lengthy prison sentences, much of which was required by mandatory sentencing provisions, without waiting for post-trial motions to be filed or

a presentence report to be prepared. This Memorandum will dispose of the three Motions noted above, all of which the Court finds to be without any merit.

I. **Summary of Defendants' Motions**

Defendant Corley's Motion to Arrest Judgment Pursuant to Rule 34 asserts that the statutory language of each count for which the Defendant was convicted requires the particular activity which constitutes a violation of that statute to be "in furtherance of" the criminal activity, and that this phrase is an element of the offense. Citing United States v. Spinner, 180 F.3d 514, 516 (3d Cir. 1999), for the proposition that a "defendant has a substantial right to be tried only on charges presented and returned by a grand jury" the absence of the phrase "in furtherance of" in the indictment in this case is a fatal defect.

Defendant Corley also argues that the government indicted the Defendant on the incorrect offenses, and he should have been indicted under 18 U.S.C. § 2118 which addresses crimes committed in which a "controlled substance belonging to or in the care, custody, control, or possession of a person registered with the Drug Enforcement Administration under § 302 of the Controlled Substances Act" is taken during the commission of a robbery or theft.

Defendant Corbin's Motion for a New Trial, although citing Rule 29, actually seeks relief under Rule 33, and asserts that the evidence was insufficient because none of the eye witnesses identified the Defendant and all of the cooperating witnesses were impeached with "their numerous inconsistencies" and several admitted to committing perjury while testifying in front of the grand jury.

The Motion filed by Defendant Corbin pro se also repeats Corley's argument that the indictment was insufficient because it does not allege that the violation was "in furtherance of"

the criminal activity.

## II. Discussion

Corbin and Corley committed a series of gunpoint pharmacy robberies from the spring of 2009 through December 2009. Corbin and Corley, the ringleaders of a group of co-conspirators they recruited, did not always rob the pharmacies together. Corley, for example, enlisted Eugene "Khalil" Butler, Curtin Brown, and/or Salim Shabazz when Corbin was unavailable. Corbin, who was a severe crack addict, committed multiple robberies with people other than Corley, including Jamil Lloyd and Joshua Waiters. Corbin and Corley enticed confederates by promising and paying them thousands of dollars for their help.

Corley and Corbin bragged about doing "their homework" and planning their robberies. They robbed on Fridays, targeting "mom and pop" stores because the owners had no guards, scant security and were unlikely to be armed. The robbers also chose pharmacies outside Norristown and Philadelphia, in the surrounding counties. They scouted out their victims and, as with their prior drug dealer robberies, used guns to intimidate their victims into surrendering the drugs the robbers targeted.

On July 23, 2009, Corbin and Corley robbed the Pepper Pharmacy at gunpoint. The Pepper Pharmacy, located at 195 East Plumstead Avenue in Lansdowne, Pennsylvania, is just two blocks from where Corbin stayed with his girlfriend and baby's mother, Nicole Perry, at 250 Coverly Road. Corbin took the pharmacist, at gunpoint, to the controlled substance cabinet, where he stole oxycontin, percocet and other narcotics. At the same time, Corley had rounded up the employees and made them get on the floor in an adjoining room. After they stole pills and cash, the Defendants forced all employees, at gunpoint, to cram into a bathroom, where they were

told to remain.  After the robbery, witnesses saw two black males with a bag and a gun, running down the street from Pepper Pharmacy, and making a left onto Cloverly Road.  Corbin admitted robbing Pepper Pharmacy to various individuals who testified at trial.

On August 10, 2009, Corley and Corbin robbed the Upper Darby Pharmacy and recruited Hampton to be a getaway driver.  Early in the morning of August 10, 2009, Corbin asked Hampton to drive him into the city.  Throughout the morning, Corbin met with prospective pill buyers.  Sometime later, Hampton drove Corbin to the Upper Darby Pharmacy, where Corbin met up with Corley.  Corbin and Corley robbed the pharmacy at gunpoint, stealing oxycontin, percocet and other narcotics from the Controlled II cabinet, as well as syrup with Codeine.  They also stole the lockbox with cash and the store surveillance video.  Corbin and Corley fled from the robbery in Corley's van.  They eventually called Hampton and gave him directions to a house in West Philadelphia where they were "breaking down" or separating pills from the robbery.  Hampton was given $1,000 for his role in the robbery.  Later that evening, Hampton drove Corbin to the houses they visited earlier that morning, where Corbin then made pill sales.

A few days after the robbery, Hampton drove Corbin to a house where he planned to stay.  Corbin put clothes and a bag in Hampton's trunk and forgot to take them out when he was dropped off.  The next day, Hampton was arrested for selling crack cocaine out of his car.  After Hampton signed a consent to search the car, the police recovered from its trunk pills and prescription bottles from the Upper Darby Pharmacy.

On August 21, 2009, Corley recruited Butler to rob the Dava Pharmacy.  Corley took all victims, at gunpoint, to a back room, where the victims were bound with plastic ties.  Corley raided the controlled substance cabinet of prescription narcotics.  The men fled in Corley's white

minivan.

On September 4, 2009, Corley and Corbin robbed the Westbrook Park pharmacy at gunpoint. While Corbin stole the prescription narcotics, Corley chased a victim who tried to escape, grabbing this victim so hard that she was bruised for days.

On September 25, 2009, Corley recruited Butler, Shabazz and Brown to rob a pharmaceutical delivery driver outside the Upper Darby Pharmacy. The bandits ultimately carjacked and kidnaped the driver and drove to Philadelphia to unload the pills. The robbers were arrested in Philadelphia. Corley was arrested after leading the police on a foot chase, where he was seen throwing bags of pills to the ground. Most of the pills were recovered. Pills were also recovered from an alleyway outside the barbershop.

## III. Legal Discussion

To the extent that the Defendants are both arguing that the indictment was defective because it did not allege that their crimes were "in furtherance of . . .", this claim has been waived because it was not raised prior to trial, as required by F. R. Crim. P. 12(b)(3), which requires that motions alleging a defect in the indictment or information must be raised prior to trial. The alleged defect in this case is distinguishable from the lack of an interstate commerce allegation in Spinner, which deprived the district court of jurisdiction.

Furthermore, Defendants have not shown any prejudice from this defect. Defendants were adequately notified of the charges against them and the evidence was overwhelming. Their crimes were so vicious and harmful to the victims that no defect in the language of the indictment would have made any difference in the outcome of this case.

As to the second defect alleged by Corley, that the government proceeded on the wrong

charge, Defendant is not entitled to any relief. The determination of what charges to bring lies at the heart of prosecutorial discretion. Courts generally do not review the selection of charges. See United States v. Armstrong, 517 U.S. 456, 464 (1996); Heckler v. Chaney, 470 U.S. 821, 823 (1985). "[T]he discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect . . . is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors." United States v. LaBonte, 520 U.S. 751, 762 (1997) (citing United States v. Armstrong, 517 U.S. 456, 464-465 (1996); Wayne v. United States, 470 U.S. 598, 607 (1985).).

Defendant has no claim of any wrongful prosecution tactics or overreaching in this case. The facts presented by the government, as noted above, were overwhelming that the Defendants were guilty of the crimes charged.

Corbin's Motion for a New Trial is unsupported by any citations to the record or any legal citations. There was overwhelming evidence against the Defendants, from cooperating witnesses, and from their own mouths through telephone calls and statements to third parties. The fact that none of the victims could identify the Defendants positively is irrelevant because the other evidence introduced by the government was so overwhelming.

For the above reasons, all of the post-trial Motions will be denied.

An appropriate Order follows.

O:\Criminal Cases\10-352 Corbin, US v\Corbin Corley Memo Post Trial Mots.wpd